IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE N.,[1] | ) |
| Plaintiff, | ) |
| v. | ) No. 19 CV 2171 |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

Christine N. ("Claimant") brings a motion for summary judgment to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") that she experienced medical improvement and was no longer entitled to period of disability and disability insurance benefits ("DIB"). The Commissioner brings a cross-motion seeking to uphold the decision. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion for summary judgment (Dckt. #20) is granted and the Commissioner's motion for summary judgment (Dckt. #27, 28) is denied.

**A.    Procedural History**

Following an administrative hearing, Administrative Law Judge ("ALJ") Joel Fina found on January 14, 2010, that Claimant (then 34-years old) had been disabled since June 15, 2008,

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Acting Commissioner of Social Security Kilolo Kijakazi as the named defendant.

1

due to her mental impairments. (R. 734-35). On April 10, 2015, during a periodic continuing disability review, the Social Security Administration found that Claimant had experienced medical improvement and was no longer entitled to benefits. (R. 30, 140-41). Claimant's request for reconsideration was denied and a hearing was held on August 7, 2017, before ALJ William Mackowiak. (R. 45-81). On November 2, 2017, the ALJ issued a decision finding that Claimant's disability had ended as of April 1, 2015, and that she had not become disabled again since that date. (R. 33-38). The Appeals Council denied review on January 30, 2019, (R. 1-6), making the ALJ's decision the Commissioner's final decision. 20 C.F.R. §404.985(d); *see also Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant filed this action in the District Court on March 28, 2019.

B. **The Social Security Administration Standard**

To qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). It then determines whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii). At step three, the SSA compares the impairment or combination of impairments found at step two to a list of

impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the individual is considered disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

Once a claimant has been deemed disabled, there is a statutory requirement that the claimant's "continued entitlement" to her disability benefits "be reviewed periodically." 20 C.F.R. §404.1594(a). During these reviews, the Commissioner must determine whether there has been "medical improvement" in the claimant's impairment. Medical improvement is defined by the SSA as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent . . . decision [in claimant's favor]." 20 C.F.R. §404.1594(b)(1). The most recent decision in Claimant's favor is the comparison point decision ("CPD").

SSA regulations prescribe an eight-part test for determining whether medical improvement has occurred. 20 C.F.R. §404.1594(f). The SSA must consider: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has an

3

impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1; (3) if not, whether there has been medical improvement (as defined above); (4) if there has been medical improvement, is it related to claimant's ability to do work (i.e. has it caused an increase in claimant's RFC); (5) if there has not been medical improvement or if the medical improvement is not related to claimant's ability to work, do any exceptions to medical improvement apply; (6) if the medical improvement is related to claimant's ability to do work or if certain exceptions apply, are claimant's current impairments in combination severe; and (7) if claimant's impairment is severe, does claimant have the RFC to do past relevant work; and (8) if claimant cannot do past relevant work, does claimant's RFC enable her to do other work. *Id.*

    **C.**    **The Pertinent Evidence in the Administrative Record**

Claimant seeks disability benefits for limitations stemming from schizoaffective disorder.[3] The administrative record contains the following evidence that bears on Claimant's claim:

    **1.**    **The prior decision approving Claimant for disability benefits**

ALJ Fina approved Claimant's application for DIB on January 14, 2010, finding that Claimant had been disabled since June 15, 2008. (R. 731). At that time, Claimant had been diagnosed with schizoaffective disorder, bipolar disorder, panic disorder with agoraphobia, PTSD, and borderline personality disorder. (R. 452). She experienced hallucinations, delusions, and suicidal thoughts. (*Id.*). ALJ Fina determined that in light of Claimant's "well documented and extensive mental impairments," she was "unable to sustain sufficient concentration,

---

[3] Schizoaffective disorder is "a chronic mental health condition characterized primarily by symptoms of schizophrenia, such as hallucinations or delusions, and symptoms of a mood disorder, such as mania and depression." National Alliance on Mental Illness, Schizoaffective Disorder, https://www.nami.org/About-Mental-Illness/Mental-Health-Conditions/Schizoaffective-Disorder (last visited Feb. 16, 2022).

persistence or pace to do even simple, routine tasks on a regular and continuing basis for eight hours per day, five days per week for a forty-hour work week or an equivalent schedule." (R. 734). He based this finding on the opinions of Balamoorti Gaonkar, M.D., Anupama Sivakumar, M.D., and Ravinderpal Nandra, M.D. (*Id.*). Referencing the testimony of a vocational expert, he concluded that Claimant was disabled because she was unable to perform any job which existed in significant numbers in the economy. (R. 735).

### 2. The administrative hearing to determine whether Claimant's disability was continuing

On April 10, 2015, it was determined that Claimant was no longer disabled as of April 1, 2015. (R. 30). That determination was upheld on reconsideration after a disability hearing by a state agency disability hearing officer. (R. 30). Claimant filed a timely written request for a hearing before an administrative law judge and such a hearing was convened on August 7, 2017, by ALJ Mackowiak.

#### a. Claimant's testimony at the August 7, 2017 hearing

At the hearing, Claimant testified that, after her application for DIB was initially approved in 2010, she was hospitalized for psychiatric reasons because she was having hallucinations (in particular, she felt that the television was talking to her and her deceased mother was laughing at her). (R. 55). Claimant explained that she had been unable to work since January 2010 because she periodically has hallucinations that leave her depressed, crying on the couch for two days, and unable to be around others. (R. 57, 59). She cannot tolerate watching television because she believes that the things that she sees on the television are going to happen to her. (R. 57, 70). For example, she once saw her next-door neighbor and thought he was going to kill her just after she had watched the news and had seen that a woman had been killed. (R. 58). Claimant also testified that she gets nervous and paranoid when visitors

(including one of her sons and his family) visit. (R. 69). When company is at the house, Claimant explained that she has conversations in her head to avoid participating in conversations with others. (R. 66). Claimant sometimes has trouble leaving the house because she is suspicious of everyone. (R. 54).

Although Claimant has consistently sought psychiatric treatment since she was found to be disabled on January 14, 2010, she has trouble trusting her therapist and her physician. (R. 51-52). For a period of time, she thought her doctor was trying to kill her. (R. 59). Her current medications help with her symptoms but do not eliminate them and Claimant does not inform her medical providers about her hallucinations because she does not want to be prescribed more medication than she is already taking. (R. 52, 59).

### b. The medical evidence in the record

No medical records pre-dating the January 2010 disability determination were included in the record from the August 7, 2017 hearing. Instead, medical evidence concerning Claimant's condition post-January 2010 was presented. Claimant's treating psychiatrist, Bindu Gandhiraj, M.D., examined Claimant on January 6, 2015, and observed that Claimant's mood was stable and that she had had no recent verbal or physical aggression. (R. 387). Her sleep and appetite were reportedly fine, she had no symptoms of depression, mania, hypomania, or psychosis, and she was compliant with her psychotropics. (*Id.*). The doctor noted that Claimant was drinking six shots per month. (*Id.*). When Claimant saw Dr. Gandhiraj again on August 26, 2015, the report was the same except that Claimant claimed to have cut down on her drinking. (R. 590).

On April 8, 2015, state agency psychologist Donald Henson found that Claimant was in stable remission from her schizoaffective disorder and that medical improvement had occurred. (R. 443, 452). He further concluded that Claimant "may have difficulty satisfactorily performing

6

detailed activities of a somewhat complicated nature," but "possesses sufficient cognitive and attentional abilities to perform at least simple routine activities." (R. 456).

The record also contains the July 10, 2017 notes from treating physician Lawrence Kacmar, M.D., who reported that Claimant was compliant with her medication and was doing her "best ever." (R. 670). Finally, treating psychiatrist Danish Hangora, M.D., examined Claimant multiple times between August 19, 2016, and July 18, 2017, and consistently reported that her mood was stable and her symptoms of racing thoughts and delusions were manageable with medication. (R. 716-725).[4]

## II. THE ADMINISTRATIVE LAW JUDGE'S DECISION

ALJ Mackowiak undertook the eight-step continuing disability review analysis described above. He determined that Claimant had not engaged in substantial gainful activity through the date of the decision and that, as of April 1, 2015, her mental impairment did not meet or equal a listed impairment. (R. 32). He noted that Claimant had moderate limitations in understanding, remembering, or applying information; normal thought process, speech, insight, and judgment; intact memory; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace with normal attention, concentration, cognitive functioning, and memory; and mild limitations in adapting or managing oneself. (R. 32-33).

At step three, he determined that medical improvement occurred on April 1, 2015, because Claimant's "schizoaffective disorder [was] stable on medications" and her symptoms were "managed with treatment and medication." (R. 33). Even so, he determined that plaintiff's impairment of schizoaffective disorder remained severe. (R. 34). The ALJ next found that Claimant's medical improvement was related to her ability to work because it resulted in an

---

[4] Other evidence that is included in the record and referenced by the ALJ is not recapitulated here because it does not bear on the Court's decision.

increase in Claimant's RFC. He determined that Claimant had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "she cannot perform work requiring more than simple workplace judgment; limited to simple work-related decisions; simple, routine, repetitive tasks; few if any workplace changes, no rapid production quotas; no interaction with public; and occasional interaction with coworker[s] and supervisors." (R. 34). In reaching this conclusion, he referenced the findings of treating psychiatrist Dr. Gandhiraj and examining practitioner Dr. Kacmar. The ALJ gave great weight to the October 2016 statement submitted by Dr. Hangora, which indicated that Claimant's "symptoms were managed on medication." (R. 36). He also gave significant weight to the April 2015 assessment of state agency psychologist Dr. Henson.

The ALJ concluded that this RFC would not permit Claimant to do her past relevant work as a stock clerk. (R. 37). At step eight, relying on the testimony of a vocational expert, the ALJ concluded that there were other jobs that plaintiff could perform. *Id.*

## III.   STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free

from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

To prevent the termination of disability benefits, the claimant bears the burden of showing by medical evidence that she is disabled. *See, e.g., Mables v. Sullivan*, 812 F.Supp. 886, 888 (C.D.Ill. 1993) (citing cases). The Commissioner, however, has the burden of showing that medical improvement has occurred and that the improvement is related to the claimant's ability to work. *Id.*; *Hickey v. Colvin*, 13 C 7857, 2015 WL 3929642, at *2 (N.D.Ill. June 25, 2015) (citing cases).

IV. ANALYSIS

Claimant asserts that remand is required because, *inter alia*, , the ALJ improperly determined that a medical improvement in her condition had occurred. (Dckt. #20 at 1). The

9

Court agrees that the ALJ's finding of medical improvement is not supported by substantial evidence and that this error requires remand.[5]

"Before limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with her impairments, or else that an exception to this rule applies." *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011). As noted above, medical improvement is any decrease in the medical severity of the impairment(s) which was present at the time of the most recent decision in the claimant's favor. 20 C.F.R. §404.1594(b)(1). Medical improvement is "*determined by a comparison of prior and current medical evidence* which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. §404.1594(c)(1) (emphasis added). By "prior medical evidence," the regulations mean evidence documenting the severity of the claimant's impairment(s) at "the time of the most recent favorable medical decision." 20 C.F.R. §404.1594(c)(7).

Accordingly, findings of medical improvement "must be based not on a single report as such, but rather on a comparison between the medical report or reports that reflect an allegedly 'improved' claimant and the most recent favorable decision of disability." *Yousif v. Chater*, 901 F.Supp. 1377, 1385 (N.D.Ill. 1995). In other words, an ALJ must compare evidence from the time when the claimant was disabled to evidence from the period following the alleged medical improvement:

> An ALJ cannot merely consider whether a claimant's condition is better based on one (or even two) reports that post-date the alleged end of the disability period.

---

[5] Claimant asserts that the ALJ made other errors as well. However, based on its conclusion that remand is required for the above reason, the Court need not address Claimant's arguments regarding these remaining errors. The Commissioner should not assume those issues were omitted from this decision because no error was found regarding them.

> That inquiry makes no sense unless the ALJ goes on to address the more difficult question, "better than what?" Common sense makes clear that a claimant's condition improves only if it is seen in relation to something else.

*Hickey*, 2015 WL 3929642, at *5; *see, e.g., Kimberly T. v. Saul*, No. 19 C 487, 2019 WL 6310016, at *2 (N.D.Ill. Nov. 25, 2019) (noting that there is "no basis for determining that [medical improvement] had occurred" absent a comparison between the symptoms that rendered the claimant disabled and her symptoms at the time the ALJ found her to be improved); *Magura v. Colvin*, No. 2:15-cv-289-PRC, 2016 WL 5439869, at *7 (N.D.Ind. Sept. 29, 2016) (noting that an ALJ "must compare the medical reports that reflect the ALJ's finding of improvement with the medical reports of the time when the claimant was found disabled"); *Bartruff v. Astrue*, No. 12-571-GPM-CJP, 2013 WL 498790, at *7 (S.D.Ill. Jan. 10, 2013) (finding medical improvement was not shown where the ALJ "discussed only the 'current medical evidence,' i.e., the medical treatment that occurred after the prior decision finding him disabled" and did not "compare the current medical evidence to the prior medical evidence in order to determine whether there had been medical improvement").

Here, the ALJ upheld the agency's prior determination that Claimant had experienced medical improvement and that she was no longer disabled as of April 1, 2015. However, he arrived at this conclusion without comparing any of Claimant's symptoms and medical records from before the January 2010 finding that she was disabled to post-January 2010 medical evidence that purportedly shows that she is not disabled. Indeed, the reports of Balamoorti Gaonkar, M.D., Anupama Sivakumar, M.D., and Ravinderpal Nandra, M.D. – which ALJ Fina relied on when finding Claimant disabled in 2010 – are neither included in the record nor mentioned in ALJ Mackowiak's analysis.[6] Moreover, although the CPD is included in the

---

[6] If the record does not contain adequate information for the ALJ to make the required comparison, the ALJ had a responsibility to supplement it. *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (finding

11

record, the ALJ does not discuss its findings or how they compare to Claimant's current level of impairment.[7] *Cf. Carin P. v. Saul*, No. 19-2041, 2020 WL 3400198, at *3 (C.D.Ill. Apr. 13, 2020) (finding that an ALJ's medical improvement analysis was adequate where she "referenced the prior disability finding in her decision *and* compared those findings to Plaintiff's current level of impairment") (emphasis added).

Rather than engaging in a comparative analysis, the ALJ cited several medical reports from January 2015 through July 2017 to support his finding that Claimant was no longer disabled as of April 1, 2015. According to the ALJ and the Commissioner, these reports show that Claimant's memory is intact, her thought processes are normal, and her schizoaffective disorder is stable on medications. (Dckt. #28 at 8; R. 33). Even presuming that they do, these records do not provide an evidentiary basis for assessing whether Claimant has improved to the point where she was no longer disabled in April 2015 because they do not allow for a comparison between Claimant's condition at the time they were generated and Claimant's condition at or before the time that she was initially found to be disabled in January 2010. The governing regulation and the caselaw cited above require such a comparative analysis and do not permit the ALJ to start with a blank slate by merely considering medical evidence that was generated shortly before or after a claimant is deemed to no longer be disabled.

---

that "because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record").

[7] The Commissioner argues that the ALJ "referenced the comparison point decision." While the ALJ did note that "the most recent favorable medical decision finding that the claimant was disabled is the decision dated January 14, 2010," (R. 31), that is the only reference to the prior decision, and it is insufficient. The Commissioner's recitation of the decision's findings – that Claimant "could not sustain sufficient concentration, persistence or pace for simple tasks" – does not cure the ALJ's omission. *See, e.g., McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (finding it is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision").

12

The Court notes that such a comparison is particularly important in cases like this one, where the Claimant suffers from a mental illness. As the Seventh Circuit has repeatedly emphasized, a person with recurrent mental illness "will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Although Claimant testified that she has more good days than bad, she also testified that she has continued to have serious and troubling issues related to her mental health since the January 2010 disability finding (including a psychiatric hospitalization), which conflicts with the innocuous picture of Claimant's mental health painted by the records the ALJ relied on. *Supra,* at Section I(C)(2)(a). Furthermore, Claimant's avowed distrust of her healthcare providers and her lack of transparency with them (*id.*) raise questions about how accurately the providers' records reflect Claimant's mental status. Consequently, the Court concludes that a remand is necessary so that the ALJ can engage in the comparative analysis required by the governing regulation (20 C.F.R. §404.1594(f)).

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary remand (Dckt. #20) is granted and the Commissioner's motion for summary judgment is denied (Dckt. #27, 28). The decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with the Memorandum Opinion and Order.

**ENTERED:** February 16, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**